PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**

**Jun 01, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.   2:22-cr-0118 TLN |
| Plaintiff, | 18 U.S.C. § 1343 – Wire Fraud |
| v. | |
| DENNIS MOORE, | |
| Defendant. | |

I N F O R M A T I O N

COUNT ONE: [18 U.S.C. § 1343 – Wire Fraud]

The United States Attorney charges:

DENNIS MOORE,

defendant herein, as follows:

## I.     INTRODUCTION

1.      From at least around June 2015 to at least September 2018, DENNIS MOORE was an individual who was married to "Spouse."  MOORE and Spouse lived and worked in and around San Mateo County, California.

2.      At all times relevant to this information, Spouse maintained a Bank of America account in the name of Spouse ending in 7530 and Wells Fargo bank accounts in the name of Peninsula Sports ending in 6152 and 0842.  Peninsula Sports is a fictitious business.

3.      At all times relevant to this information, Victim 1 and Victim 2 lived in Sacramento in

INFORMATION

1

the State and Eastern District of California.

## II.      SCHEME TO DEFRAUD

4.      Beginning at least in or around June 2015 and continuing until at least September 2018, in Sacramento in the State and Eastern District of California and elsewhere, MOORE and Spouse knowingly devised, intended to devise, and participated in a material scheme and artifice to defraud Victim 1, Victim 2, Victim 3, Victim 4, Victim 5, Victim 6, Victim 7, and others known and unknown (collectively, the "victims") and to obtain money from the victims by means of materially false and fraudulent pretenses, representations, promises, half-truths, omissions and the concealment of material facts.   The purpose of the scheme was to obtain victim funds, and to lull victims and discourage them from requesting to withdraw funds, for purported real estate investments.

## III.      MANNER AND MEANS

5.      As part of the scheme to defraud, MOORE and Spouse utilized the following ways and means, among others:

6.      MOORE and Spouse represented that MOORE purchased homes to renovate and resell for a profit.  MOORE and Spouse offered the victims an opportunity to invest in MOORE's real estate scheme and promised a 25% profit at the end of a fixed period of time.  MOORE and Spouse also told the victims that MOORE and Spouse needed loans because their home was in foreclosure and they were suffering other financial difficulties, but that MOORE and Spouse would be able to repay the loans when their property sold because they had sufficient equity to cover the loans.

7.      MOORE executed and signed contracts with the victims specifying the terms of the investment and promised a full repayment plus 25% interest at the end of the term of the investment. Some of these contracts were sent through the United States Mail via the Postal Service or delivered by common carrier.  Other contracts were sent via electronic mail.

8.      The victims sent funds to MOORE and Spouse by wiring money into Spouse's bank accounts and writing checks to Peninsula Sports, MOORE, and Spouse.

9.      The representations MOORE and Spouse made to victim investors were false.  For example, in truth and in fact MOORE and Spouse did not invest the victims' money into real estate projects, and MOORE and Spouse did not have sufficient equity in their property to cover the loans

INFORMATION

2

from the victims.

10.     To lull the victims, delay communication, and discourage victims from withdrawing funds, MOORE and Spouse made false representations to the victims.  As one example, MOORE and Spouse falsely told some victims that MOORE and Spouse's bank accounts had been hacked, when in truth and in fact their accounts had not been hacked.

11.     MOORE and Spouse would often convince the victims to reinvest their purported earnings into MOORE's supposed real estate activities.  In truth and in fact, those earnings did not exist, and MOORE and Spouse were not using the funds for ongoing real estate investment.  MOORE and Spouse also induced some victims to take out additional loans for investment purposes by falsely representing that MOORE and Spouse intended to help repay those loans.  Contrary to their representations to victims, MOORE and Spouse used the victims' money to pay for personal expenses and continue the scheme.

12.     In the end, MOORE and Spouse repaid little to no amount of the victims' investments, loans, or promised interest.  MOORE and Spouse misappropriated approximately $516,529 in funds from the victims as a result of the scheme.

### IV.     USE OF THE INTERSTATE WIRES

13.     On or about the date set forth below, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, defendant MOORE, as more specifically charged below, knowingly transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds:

| ON OR ABOUT DATE | WIRE DESCRIPTION |
| --- | --- |
| November 10, 2017 | Wire transfer of $100,000 from Victim 1's Ally Bank account into Wells Fargo account ending in 0842 |

//

//

//

//

//

INFORMATION

3

All in violation of Title 18, United States Code, Section 1343.

Dated:  June 1, 2022

PHILLIP A. TALBERT
United States Attorney

By:  */s/ Veronica Alegría*
VERONICA M.A. ALEGRÍA
Assistant United States Attorney

INFORMATION

4

**United States v. Moore**
**Penalties for Information**

**Defendant**
**MOORE**


**COUNT 1:**

VIOLATION:      18 U.S.C. § 1343 – Wire Fraud

PENALTIES:      Maximum of up to 20 years' imprisonment; and/or
Fine of up to $250,000 or twice the gross gain or loss;
Supervised release up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)